IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 19-cv-01608-MSK

ROCKY MOUNTAIN WILD,
NATIONAL PARKS CONSERVATION ASSOCIATION,
CENTER FOR BIOLOGICAL DIVERSITY, and
WILDEARTH GUARDIANS,

    Plaintiffs,

v.

DAVID BERNHARDT, in his official capacity as Secretary of the Interior, and
BUREAU OF LAND MANAGEMENT,

    Defendants,

v.

AMERICAN PETROLEUM INSTITUTE,
INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA,
UTAH PETROLEUM ASSOCIATION, and
STATE OF UTAH,

    Intervenor-Defendants.

---

**OPINION AND ORDER GRANTING MOTIONS TO TRANSFER**

---

**THIS MATTER** comes before the Court pursuant to Defendants David Bernhardt and the Bureau of Land Management and the Intervenor-Defendants American Petroleum Institute, Independent Petroleum Association of America, Utah Petroleum Association, and the State of Utah's (hereafter, "the Defendants") Motions to Transfer to the District of Utah **(# 22, # 23, and # 24)**, the Plaintiffs Rocky Mountain Wild, National Parks Conservation Association, Center for Biological Diversity, and Wildearth Guardians' (hereafter, "the Plaintiffs") combined response **(# 25)**, and the Defendants' replies **(# 26 and #27)**.

1

## FACTS

The Court assumes the reader's familiarity with the claims and underlying proceedings in this case, and offers only a brief summary here, elaborating as necessary in its analysis.

The Bureau of Land Management ("BLM") uses a three-step process when managing oil and gas development on public lands. **(# 1 at 8)**. The BLM first creates Resource Management Plans ("RMP") to identify which public lands will be open to oil and gas leasing and provides for any stipulations or conditions for the development of those leases. **(# 1 at 8)**. In formulating an RMP, the BLM relies upon Environmental Impact Statements ("EIS") and Environmental Analyses ("EA") prepared in accordance with the National Environmental Policy Act ("NEPA"). EAs consider the impact of oil-and-gas leasing on the specific lands under consideration. **(# 1 at 10-11)**.

In December 2017 and June 2018, the Bureau of Land Management ("BLM") issued 59 oil and gas leases covering 61,910.92 acres of land in northeast Utah. **(# 1 at 1)**. In this case, the Plaintiffs challenge these two decisions made by the by the BLM's Vernal, Utah Field Office arguing that the BLM failed to consider how the air pollution from developing these leases will adversely affect public health, the environment, the climate, and nearby public lands. **(# 1 at 1)**. More specifically, the Plaintiffs assert the following three claims for relief: (i) that the BLM relied on a flawed EA prepared for the Vernal Field Office concluding that the December 2017 lease sale in the Uinta Basin would not have a "significant impact on the environment" and did not prepare an EIS, in violation of NEPA; (ii) the BLM failed to evaluate reasonable alternatives to its decision to issue the 59 oil and gas leases covering 61,910.92 acres in northeast Utah in violation of NEPA; and (iii) the BLM failed to prevent unnecessary degradation of the public lands in violation of the Federal Land Policy and Management Act ("FLPMA"), provide for

compliance with and support of federal air quality standards, and ensure conformance with the Vernal Field Office RMP prior to issuing the December 2017 and January 2018 leases. **(# 1 at 31-37)**.

Plaintiffs initially filed this appeal as part of one administrative appeal challenging three BLM decisions to issue oil and gas leases in both Colorado and Utah. However, the Court granted the Defendants' motion to sever to the extent that, having found no evidence of a common record or common questions of law or fact, it bifurcated the case into two separate actions — one from the Colorado decision and one from the two Utah decisions. *See Rocky Mountain Wild v. Bernhardt*, No. 18-cv-02468-MSK, ECF No. 43 (D. Colo. May 29, 2019). The Court also denied Defendants' motion to transfer review of the Utah decisions to the United States District Court in Utah, finding this Court is an appropriate forum for reviewing the Utah decisions. *Id.* Thus, in accordance with the Court's order, the Plaintiffs filed the pending case challenging the BLM's issuance of the Utah oil and gas leases. The Defendants[1] now move to transfer this new action to the United States District Court in Utah.

## ANALYSIS

The Defendants seek to transfer this case to the District of Utah asserting that (i) the Plaintiffs could have originally brought the action in the District of Utah and (ii) the public and private interest factors weigh in favor of transfer. **(# 22-1 at 5)**. In response, the Plaintiffs argue that this Court should not reconsider its earlier decision denying the motion to transfer and that their choice of forum outweighs any local interest in the BLM's Vernal Office's oil and gas leasing decisions. **(# 25)**.

---

[1] The State of Utah filed an unopposed motion to intervene as a Defendant in this action, which was granted by the Court, and joins in the request to transfer this appeal. **(# 28)**.

3

The Court is vested with broad discretion to transfer a case to a venue in which it could have originally been brought if a transfer would be in the "interest of justice" and "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Any party, and even the Court *sua sponte*, can move for transfer of an action under § 1404(a) at any time during the pendency of the case. *Chrysler Credit Corp. v. Country Chrysler Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

In order for the Defendants to establish that transfer is proper, they must show that the Plaintiffs could have originally filed this suit in the District of Utah and that considerations of convenience and the interest of justice weighs in favor of a transfer to Utah. *Chrysler Credit Corp. v. Country Chrysler Inc.*, 928 F.2d 1509, 1515-16 (10th Cir. 1991). Here, it is undisputed that Plaintiffs could have originally filed this action in the District of Utah. The public lands at issue are located in Utah. The BLM office and its officials who made the challenged leasing decisions are located in Utah. Also, all underlying NEPA proceedings that led to the leasing decisions were conducted in Utah. Thus, because a substantial part of the events giving rise to the claims occurred within the District of Utah, it would be a proper venue. 28 U.S.C. § 1391(b).

Now, turning to whether considerations of convenience and the interest of justice weigh in favor of a transfer, the Court examines each case individually and considers the following factors: (i) the plaintiffs' choice of forum; (ii) the accessibility of witnesses and other sources of proof; (iii) the cost of making the necessary proof; (iv) questions as to the enforceability of a judgment if one is obtained; (v) relative advantages and obstacles to a fair trial; (vi) difficulties that may arise from congested dockets; (vii) the possibility of the existence of questions arising in the area of conflict of laws; (viii) the advantage of having a local court determine questions of local law; and (ix) all other considerations of a practical nature that make a trial easy, expeditious

and economical. *Chrysler Credit Corp. v. Country Chrysler Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

Although brought as a civil action, this case is essentially an administrative appeal for which most of the *Chrysler Credit* factors are irrelevant because they bear upon fact-finding at trial. Thus, the relevant factors here are (i) the Plaintiffs' choice of forum and (ii) the advantage of having a local court determine questions of local law. The Court considers each factor in turn.

### A. Plaintiffs' Choice of Forum

The Plaintiffs have the presumptive right to select a forum, and the Defendants bear the burden of establishing that inconvenience of proceeding in Colorado outweighs the presumption that the Plaintiffs' choice of forum is appropriate. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). Here, while the Plaintiffs are conservation organizations with offices located in Colorado[2], the events giving rise to the lawsuit (the challenged leasing decisions and the underlying administrative proceedings) occurred entirely in Utah. Thus, the Court gives little weight to this factor. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1168 (10th Cir. 2010) ("Courts accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material or significant connection to the plaintiff's chosen forum.") (internal citation omitted). Further, since the Court bifurcated the original action into two separate cases and ordered Plaintiffs to file a new case as to the Utah oil and gas leases, there has been no showing that Plaintiffs would have chosen Colorado as their forum from the outset. It may be that Plaintiffs would have originally (and properly) filed this action in the District of Utah.

---

[2] It appears, however, that only one Plaintiff, Rocky Mountain Wild, is incorporated and headquartered in Colorado while the other Plaintiffs are national organizations with offices located throughout the country. **(# 1 at 4-5)**.

### B. The Advantage of Having a Local Court Determine Questions of Local Law

The Defendants argue that the Utah decisions impact local land and the local economy and thus Utah has a great local interest in reviewing the administrative decisions. Indeed, after Plaintiffs filed their Complaint, the State of Utah moved to intervene as a Defendant[3] arguing that the State of Utah and its citizens are "keenly interested in the management of federal public lands within [Utah]." **(# 24 at 3)**. Approximately 2/3 of the State of Utah is managed by Federal entities, and the challenged leases are located in Uintah County, which is "comprised of 70% public land." **(# 24 at 3)**. Further, "[o]il and gas development of BLM land in Utah provides revenue to the State and counties (with approximately half of federal revenues distributed to the State), alleviates unemployment by providing high-paying, stable jobs, and contributes to low energy costs throughout the State." **(# 24 at 3)**. Accordingly, the outcome of this lawsuit will impact Utah citizens much more so than Colorado citizens.

Although this is an administrative appeal, the Court agrees that in this case, "[t]here is a interest in having localized controversies decided at home." *Gulf Oil Corp. v.* Gilbert, 67 S.Ct. 839 (1947); *Trout Unlimited v. United State Dept. of Agriculture*, 944 F. Supp. 13, 19 (D.D.C. 1996) (transferring administrative appeal to Colorado because of strong local interests stating "[t]his policy rationale applies equally to the judicial review of an administrative decision which will be limited to the administrative record."). This matter concerns the BLM's issuance of numerous oil and gas leases, all of which are located in Utah. Further, the Plaintiff specifically challenges the underlying process and the manner in which the BLM issued these leases. All of the underlying proceedings occurred in Utah by officials who reside and work in the BLM's Utah field offices. Further, any outcome would potentially impact the economic interests of the

---

[3] The Court granted the State of Utah's unopposed motion to intervene as a Defendant. **(# 28)**.

State of Utah and its future oil and gas development projects. Also, any final decision rendered in this case will likely be carried out by Utah officials and monitored by Utah regulatory agencies. While the Plaintiffs contend that this case should remain in Colorado because the development of these Utah leases impacts land and air quality throughout the Uinta Basin, which "straddles the Utah-Colorado border," **(# 25 at 2)**, the Court finds this theory to be speculative and unsupported. There has been no clear showing as to what magnitude the air quality in Colorado might be affected by the challenged oil and gas leases located in Utah. Thus, considerations of convenience and the local interest factor weigh in favor of transferring this case to the District of Utah.

While it is true that the Court previously denied a request to transfer venue in 18-cv-2468-MSK (which challenged the issuance of leases in both Colorado and Utah) and all observations in that Order remain valid, the complexion of the case has changed. With the cases now de-coupled, the factors favoring denial of a transfer are significantly weakened. Contrary to Plaintiffs' suggestion, this is not a reconsideration of a prior order. Rather, this is a new action with different parties and claims limited to challenging the oil and gas leases located solely in Utah, and Defendants have filed a new motion requesting a transfer of venue. Given that the Court may transfer an action any time and after considering this case on an individualized "case-by-case consideration of convenience and fairness," *Chrysler Credit*, 928 F.2d at 1516, the Court finds the Defendants have met their burden of establishing that considerations of convenience and the interests of justice strongly favor transfer to the District of Utah. The motions to transfer are granted.

## CONCLUSION

For the foregoing reasons, the Motions to Transfer to the District of Utah **(# 22, # 23, and # 24)** are **GRANTED**. This case shall be transferred to the District of Utah.

Dated this 19th day of November, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge